1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LORENZO CRAMER,                              No.  2:14-cv-1472-TLN-EFB P

12              Plaintiff,

13        v.                                      FINDINGS AND RECOMMENDATIONS

14   EVALYN HOROWITZ,

15              Defendant.

16

17        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

18   U.S.C. § 1983.  He alleges that defendant Horowitz (hereafter "defendant") violated his Eighth

19   Amendment rights by exhibiting deliberate indifference to his serious medical needs.[1]  Defendant

20   has filed a motion for summary judgment.  ECF No. 43.  Plaintiff has filed an opposition to the

21   motion (ECF No. 47) and defendant has filed a reply (ECF No. 48).  For the reasons set forth

22   below, defendant's motion must be granted.

23   **I.    Background**

24        Plaintiff brings two Eighth Amendment claims against the defendant.

25   /////

26   /////

27   _____

28   [1] Plaintiff also named four other defendants to his complaint but, after screening, the court
     determined that only service for Horowitz was appropriate.  ECF No. 12.

1

### A.    Claim One

Plaintiff alleges that he suffered a shoulder injury during an altercation with another inmate in June 2013.  ECF No. 1 at 3.  A nurse examined him and determined that no medical tests on the shoulder were necessary because no abnormalities were visually evident.  *Id*.  Over the next three weeks, however, plaintiff claims to have experienced an increase in pain in his shoulder and neck.  *Id*.  On July 22, 2013, he was seen in the clinic regarding this pain and ultimately referred to the defendant.  *Id*.  Plaintiff claims that defendant ignored the referral and did not see him until "a few" weeks later.  *Id*. at 4.  He alleges that when defendant did examine him, she dismissed his concerns and brusquely informed him that she would not be ordering any treatment for his shoulder.  *Id*.  He filed an appeal regarding his interactions with defendant, but claims that his efforts to secure treatment for his injury have been unavailing.  *Id*. at 4-5.

### B.    Claim Two

Plaintiff claims that "between 2012, and late 2013" defendant was his primary care provider.  *Id*. at 5.  He alleges that he repeatedly told defendant that he was suffering from significant pain in his shoulder, arm, and hand as a consequence of a gunshot injury.  *Id*.  In spite of these requests, he claims that defendant lowered and ultimately discontinued his pain medication.  *Id*. at 5-6.  Her alleged rationale for doing so was a suspicion that plaintiff was "cheeking" his medication – that is, merely pretending to swallow medication with the intent to sell or trade it to addicted inmates.  *Id*.  Plaintiff denies that he ever "cheeked" medication and claims that the substituted painkillers he is currently subscribed – motrin and other non-habit forming drugs – are insufficient to combat his pain.  *Id*. at 6.  He claims that he is now in serious pain and unable to secure effective treatment.  *Id*. at 6-7.

## II.    Legal Standards

### A.    Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury

1    to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

2    (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

3    *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

4    motion asks whether the evidence presents a sufficient disagreement to require submission to a

5    jury.

6            The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

7    or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

8    "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

9    trial.'"  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)  (quoting Fed. R.

10   Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary

11   judgment practice, the moving party bears the initial responsibility of presenting the basis for its

12   motion and identifying those portions of the record, together with affidavits, if any, that it

13   believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323;

14   *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets

15   its burden with a properly supported motion, the burden then shifts to the opposing party to

16   present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson,*

17   477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

18           A clear focus on where the burden of proof lies as to the factual issue in question is crucial

19   to summary judgment procedures.  Depending on which party bears that burden, the party seeking

20   summary judgment does not necessarily need to submit any evidence of its own.  When the

21   opposing party would have the burden of proof on a dispositive issue at trial, the moving party

22   need not produce evidence which negates the opponent's claim.  *See, e.g., Lujan v. National*

23   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

24   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

25   24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

26   summary judgment motion may properly be made in reliance solely on the 'pleadings,

27   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

28   should be entered, after adequate time for discovery and upon motion, against a party who fails to

1    make a showing sufficient to establish the existence of an element essential to that party's case,

2    and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

3    circumstance, summary judgment must be granted, "so long as whatever is before the district

4    court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

5    satisfied." *Id.* at 323.

6         To defeat summary judgment the opposing party must establish a genuine dispute as to a

7    material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

8    is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at

9    248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

10   will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

11   determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party

12   is unable to produce evidence sufficient to establish a required element of its claim that party fails

13   in opposing summary judgment.  "[A] complete failure of proof concerning an essential element

14   of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S.

15   at 322.

16        Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

17   the court must again focus on which party bears the burden of proof on the factual issue in

18   question.  Where the party opposing summary judgment would bear the burden of proof at trial on

19   the factual issue in dispute, that party must produce evidence sufficient to support its factual

20   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

21   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit

22   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

23   for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

24   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

25   that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,

26   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

27        The court does not determine witness credibility.  It believes the opposing party's

28   evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

4

1  *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

2  proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

3  *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

4  dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at

5  issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

6  Cir. 1995).  On the other hand, the opposing party "must do more than simply show that there is

7  some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

8  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

9  trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant

10  summary judgment.

11       Concurrent with his motion for summary judgment, defendant advised plaintiff of the

12  requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

13  ECF No. 32 at 3-4; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d

14  952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*,

15  849 F.2d 409 (9th Cir. 1988).

16       **B.       Eighth Amendment Standards**

17       To succeed on an Eighth Amendment claim predicated on the denial of medical care, a

18  plaintiff must establish that he had a serious medical need and that the defendant's response to

19  that need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see*

20  *also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to

21  treat the condition could result in further significant injury or the unnecessary and wanton

22  infliction of pain.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may be shown by the denial,

23  delay, or intentional interference with medical treatment, or by the way in which medical care is

24  provided.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

25       To act with deliberate indifference, a prison official must both be aware of facts from

26  which the inference could be drawn that a substantial risk of serious harm exists, and he must also

27  draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Thus, a defendant is liable if

28  he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing

1    to take reasonable measures to abate it." *Id.* at 847.  A physician need not fail to treat an inmate

2    altogether in order to violate that inmate's Eighth Amendment rights.  *Ortiz v. City of Imperial*,

3    884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition,

4    even if some treatment is prescribed, may constitute deliberate indifference in a particular case.

5    *Id.*

6         It is important to differentiate common law negligence claims of malpractice from claims

7    predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment.

8    In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not

9    support this cause of action."  *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.

10   1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th

11   Cir. 2004).  Plaintiff must show a deliberate disregard for a known medical need.  The Ninth

12   Circuit has made clear that a difference of medical opinion is, as a matter of law, insufficient to

13   establish deliberate indifference.  *See Toguchi*, 391 F.3d at 1058.  "Rather, to prevail on a claim

14   involving choices between alternative courses of treatment, a prisoner must show that the chosen

15   course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in

16   conscious disregard of an excessive risk to [the prisoner's] health.'"  *Id.* (quoting *Jackson v.

17   McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

18        Finally, a supervisory official may be held liable for deliberate indifference "if there exists

19   either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient

20   causal connection between the supervisor's wrongful conduct and the constitutional violation."

21   *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  "[A] plaintiff must show the supervisor

22   breached a duty to plaintiff which was the proximate cause of the injury.  The law clearly allows

23   actions against supervisors under section 1983 as long as a sufficient causal connection is present

24   and the plaintiff was deprived under color of law of a federally secured right."  *Redman v. County

25   of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (internal quotations omitted).  Section 1983

26   does not, however, provide for liability under a theory of *respondeat superior*.  *Taylor v. List*, 880

27   F.2d 1040, 1045 (9th Cir. 1989).  That is, a supervisor may not be held vicariously liable for the

28   misconduct of his or her subordinates.

1    **III.    Analysis**

2          Defendant raises two arguments in support of her motion.  First, she argues that the

3    evidence shows that she was not deliberately indifferent in either her treatment of plaintiff's June

4    2013 shoulder injury or her treatment of his pain throughout 2012 and 2013.  ECF No. 43-2 at 8-

5    11.  Second, she argues that she is entitled to qualified immunity.  *Id*. at 11-13.  For the reasons

6    stated hereafter, the court concludes that her first argument has merit and declines to reach the

7    second on that basis.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right

8    would have been violated were the allegations established, there is no necessity for further

9    inquiries concerning qualified immunity.")*; County of Sacramento v. Lewis*, 523 U.S. 833, 841

10   n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity

11   is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional

12   right at all.").

13         **A.    Plaintiff's June 2013 Shoulder Injury**

14         Defendant, by way of her sworn affidavit, states that she evaluated plaintiff on August 19,

15   2013 based on his complaints that he had sustained a new shoulder injury during an altercation

16   with another inmate in June of that year.  ECF No. 43-4 at 7 ¶ 19.  She states that a physical

17   examination of plaintiff's shoulder and arm revealed a "full passive range of motion" and the

18   ability to freely move his neck.  *Id*.  Defendant also notes that plaintiff represented that he was

19   able to conduct his daily activities – sitting, walking, dressing himself, showering, and using the

20   toilet – without assistance.  *Id*.  Plaintiff does not directly dispute defendant's statements.  Instead,

21   he points to a medical appeal regarding this issue which was granted in part (ECF No. 47 at 11,

22   33-36) and argues that this partial grant amounts to an "unconscious admission of guilt."  *Id*. at

23   11-12.  These documents do not support his contention.  The institutional response referenced and

24   relied upon defendant's August 19, 2013 examination of plaintiff's shoulder and specifically

25   noted that "[i]t is apparent from the review of your health care chart that your treatment at MCSP

26   has been appropriate and timely."  *Id*. at 36.  The partial grant appears premised on the fact that

27   plaintiff's request to see a doctor to "rule out an injury from a fight" was granted when defendant

28   examined him on August 19, 2013.  *Id*. at 33-36.

Defendant has also provided the affidavit of Dr. B. Barnett, a physician employed by California Correctional Health Services, who reviewed plaintiff's medical records, deposition testimony, and complaint allegations. ECF No. 43-5 at 1-3 ¶¶ 1-6.  Dr. Barnett points out that a review of the pertinent medical records indicates that, contrary to plaintiff's allegations, the defendant did not ignore or delay addressing plaintiff's referral after his June 2013 fight.  *Id*. at 13 ¶ 16.   The court agrees.  Plaintiff's allegations and his medical records are consistent insofar as both indicate he was seen in the clinic for shoulder pain on July 22, 2013.  *Id*. at 87-88.  The records do not, however, support his allegation that he was actually referred to defendant on that day.  *Id*.  To the contrary, plaintiff filed an appeal after his clinic visit alleging that the examining nurse refused to let him see a doctor.  ECF No. 47 at 29-30.  In relevant part:

> On July 22, 2013, I was seen by the triage nurse who was responding to my complaint of serious pain in my right shoulder area.  The pain is comming (sic) from a bone, **but the nurse refused to let me see the doctor, stating that he thinks the pain is only muscle pain, and not in the bone-where it really hurts.** I had a fight recently, and the pain is where I was slammed to the floor by another inmate. I did not really notice it much before because the pain only recently has gotten worse.

*Id*. (emphasis added).  Dr. Barnett also opines that no additional treatment was warranted based on the results of defendant's August 19, 2013 examination of plaintiff's shoulder.  ECF No. 43-5 at 12-13 ¶13.  Even assuming that defendant failed to correctly diagnose plaintiff during that examination, nothing in the record supports the conclusion that she knowingly disregarded his serious medical needs.  *See Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted) (noting that a prison official is deliberately indifferent "only if the [prison official] knows of and disregards an excessive risk to inmate health and safety."); *see also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) ("[M]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.") (internal quotations and citations omitted), rev'd on  other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In his opposition, plaintiff argues that defendant did act with deliberate indifference because she disregarded "the risk of me having a serious cervicl (sic) spine injury" and "caused

1    me a great deal of pain and suffering by refusing to treat my neck pain and injury."  ECF No. 47

2    at 14.  The first contention is belied by the fact that the defendant examined him and concluded

3    that he had not suffered any new injury.  Again, it is not enough that her conclusion was mistaken

4    (though he has not presented any evidence that she was).  Such error might establish negligence,

5    perhaps even gross negligence, but deliberate indifference demands a finding that defendant

6    *subjectively* knew of and disregarded a risk to his health.  *See Toguchi*, 391 F.3d at 1057; *see also*

7    *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1081 (9th Cir. 2013) (deliberate

8    indifference requires "a *purposeful* act or failure to respond to a prisoner's pain or possible

9    medical need . . .") (emphasis added).  He has failed to demonstrate or even sufficiently allege

10   that defendant acted with such purpose.  His second contention fails insofar as the record plainly

11   establishes that defendant prescribed him the drug Naproxen – a non-steroidal anti-inflammatory

12   drug (NSAID) for his pain.  ECF No. 43-5 at 101; ECF No. 47 at 36.  Plaintiff obviously believes

13   that this prescription was inferior to other courses of pain treatment, but he has not shown that

14   defendant 'refused' to treat his pain.  Moreover, mere disagreements over treatment are generally

15   insufficient to establish deliberate indifference.  *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir.

16   1989) ("At most, [the inmate] has raised a difference of medical opinion regarding his treatment.

17   A difference of opinion does not amount to a deliberate indifference to [the inmate's] medical

18   needs.").  Such a disagreement gives rise to a viable deliberate indifference claim only where a

19   claimant can demonstrate that a defendant's actions were medically unacceptable under the

20   circumstances.  *See Jackson*, 90 F.3d at 332.  Plaintiff has failed to produce any evidence

21   supporting such a finding.

22        Finally, to the extent plaintiff alleges that defendant's delay in prescribing him x-rays was

23   deliberately indifferent, that claim also fails.  Records indicate that x-rays of his neck were taken

24   in October 2013 and he was diagnosed with spinal arthritis.  ECF No. 43-5 at 14 ¶ 20, 100, 105,

25   107, 115.  After the x-rays were taken, physicians continued to prescribe plaintiff a regimen of

26   NSAIDs, much like the regimen defendant had prescribed prior to the x-rays.  ECF No. 43-5 at

27   14 ¶ 20, 103.  As such, plaintiff cannot show that he suffered harm as a result of any delay.

28   /////

9

1   *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that

2   mere delay in treatment did not amount to deliberate indifference unless delay was harmful).

3         **B.**      <u>**Plaintiff's Pain Medication in 2012 and 2013**</u>

4         As a preliminary matter, plaintiff's complaint never specifies the type of pain medication

5   which defendant allegedly lowered and, ultimately, discontinued during 2012 and 2013.  ECF No.

6   1 at 5-6.  Defendant's motion interprets this claim as being predicated on the discontinuation of

7   plaintiff's opioid pain medication - specifically morphine.  ECF No. 43-2 at 4.  Plaintiff's

8   opposition confirms that this claim is based on defendant's decision to discontinue his opioids.

9   ECF No. 47-1 at 1-2.

10         Defendant emphasizes that the decision to discontinue plaintiff's opioids was made after

11   consultation with the prison's Pain Management Committee.  Records indicate that the

12   committee, after evaluating the specifics of plaintiff's case, recommended discontinuing those

13   drugs based on plaintiff's history of substance abuse[2] and history of "cheeking."  ECF No. 43-5

14   at 49.  Defendant also notes that, in lieu of the discontinued opioids, she prescribed various other

15   treatments for plaintiff's pain including physical therapy and NSAIDs.  ECF No. 43-2 at 4; ECF

16   No. 43-4 at 49-51.  Dr. Barnett, by way of his affidavit, opines that "[n]arcotics such as morphine

17   should be used with utmost caution and should be discontinued when no longer needed or when

18   the risks of abuse exceed the potential benefits."  ECF No. 43-5 at 13 ¶ 15.  For his part, plaintiff

19   contends that morphine is an effective treatment for "neuropathic pain and tendons retraction"

20   and claims that his pain was "being managed" before defendant altered his prescription.  ECF No.

21   47 at 9.  He also claims that anti-inflammatory medication could do nothing for him insofar as his

22   arm no longer had "any muscle."  *Id*.

23         Defendant is entitled to summary judgment on this claim.  An inmate has no constitutional

24   right to the medical treatment of his choice.  *Jackson*, 90 F.3d at 332.  To prevail on this claim,

25   plaintiff is required to show that the decision to discontinue his morphine was "medically

26   unacceptable under the circumstances."  *Id*.  He has failed to provide any evidence by which a

27   ────────────────

28         [2] Provided medical records indicate that plaintiff has a history of "polysubstance abuse."
ECF No. 43-4 at 38, 49

1   jury could return a favorable verdict on this claim.  To the contrary, all of the record evidence

2   before the court indicates that the decision to alter his pain management prescription was a

3   reasoned one, undertaken after careful consideration of plaintiff's medical history and the

4   intrinsic danger presented by long term reliance on opioids.[3]  The California Correctional Health

5   Care Services Pain Management Guidelines - attached in part as an exhibit to defendant's

6   affidavit – direct providers to "weigh the risks and benefits" of prescribing opioids and to

7   consider a patient's past substance abuse history.  ECF No. 43-4 at 12.  Dr. Barnett opines that

8   defendant's decision to discontinue plaintiff's morphine was "consistent with community

9   standards for best medical practices."  ECF No. 43-5 at 13 ¶ 15.  He goes on to state that "[g]iven

10  the risks, Dr. Horowitz had a duty to be circumspect about prescribing opiates to Mr. Cramer"

11  and he describes continued morphine prescription as an "obvious" risk to plaintiff's health.  *Id.*

12  Finally, defendant provides evidence that plaintiff's health improved after his morphine

13  prescription was discontinued.  She notes that he was able to exercise effectively and that,

14  between 2010 and 2013, he reduced obesity related health risks by going from 212 pounds to

15  approximately 160 pounds. ECF No. 43-5 at 14 ¶ 8, 24, 47, 53, 57.

16       Plaintiff's countervailing opinions about the propriety of continuing his morphine

17  prescription are those of a layman.  To be sure, only he could speak definitively to the level of his

18  subjective pain, but the provision of constitutionally adequate medical care does not require a

19  physician to prioritize the alleviation of pain above all other health concerns.  Common sense

20  dictates that physicians will almost invariably possess a better understanding of the risks

21  presented by a particular course of treatment than their patients, and the Eighth Amendment is not

22  violated by the good-faith exercise of professional judgment in prescribing a particular course of

23  treatment, even if that judgment is later shown to be wrong.  *See Snipes v. De Tella*, 95 F.3d 586,

24  591 (7th Cir. 1996) ("Medical decisions that may be characterized as 'classic examples of matters

25  for medical judgment', such as whether one course of treatment is preferable to another, are

26

27  [3] Dr. Barnett states that "[o]piates, such as morphine, are generally ineffective at treating neuropathic pain and especially disfavored because of the risks of severe side effects, including extreme constipation, lethargy, increased pain (hyperalgesia), addiction, respiratory suppression,

28  and death."  ECF No. 43-5 at 6 n.8.

11

1  beyond the [Eighth] Amendment's purview.").  As noted above, plaintiff was required to

2  demonstrate more than a difference of opinion with his provider; he was required to "show that

3  the chosen course of treatment 'was medically unacceptable under the circumstances,' and was

4  chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi*, 391 F.3d

5  at 1058.  The record convinces the court that he cannot do so.

6  **IV**.   **Recommendation**

7       Accordingly, it is recommended that defendant's motion for summary judgment (ECF No.

8  43) be granted.

9       These findings and recommendations are submitted to the United States District Judge

10  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

11  after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Such a document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

14  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

15  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

16  DATED:  February 7, 2017.

17                    EDMUND F. BRENNAN

18                    UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28